POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
Facsimile: (917) 463-1044
jpafiti@pomlaw.com

*Attorney for Plaintiff*

*[Additional Counsel on Signature Page]*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGIOS CONSTANTINOU, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> MONEYGRAM INTERNATIONAL, INC., W. ALEXANDER HOLMES, and LAWRENCE ANGELILLI, <br><br> Defendants. | No. <br><br> **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> <u>CLASS ACTION</u> <br><br> (DEMAND FOR JURY TRIAL) |

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

Plaintiff Georgios Constantinou ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of United States ("U.S.") Securities and Exchange Commission ("SEC") filings by MoneyGram International, Inc. ("MoneyGram" or the "Company"), as well as media and analyst reports about the Company and Company press releases. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein.

## NATURE OF THE ACTION

1.     Plaintiff brings this securities class action on behalf of all persons and entities that purchased or otherwise acquired MoneyGram securities between June 17, 2019 and February 22, 2021, inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

1

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

3.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

4.     This Court has jurisdiction over each defendant named herein because each defendant has sufficient minimum contacts with this judicial district so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

5.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the alleged misstatements entered and the subsequent damages took place in this judicial district.

6.     In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the U.S. mails, interstate telephone communications and the facilities of a national securities exchange.    Defendants disseminated the statements alleged to be false and misleading herein into this district, and Defendants solicited purchasers of MoneyGram securities in this district.

## **PARTIES**

7.     Plaintiff, as set forth in the accompanying Certification, purchased or otherwise acquired the Company's securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosure.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

8.     Defendant MoneyGram is incorporated in Delaware and maintains its principal executive offices at 2828 N. Harwood St., 15th Floor, Dallas, Texas.   The Company's shares are listed on the NASDAQ exchange ("NASDAQ") under the ticker symbol "MGI."

9.     Defendant W. Alexander Holmes ("Holmes") served as the Chief Executive Officer and Chairman of the Board of the Company at all relevant times.

10.     Defendant Lawrence Angelilli ("Angelilli") served as the Chief Financial Officer of the Company at all relevant times.

11.     Defendants Holmes and Angelilli are collectively referred to herein as the "Individual Defendants."

12.     Each of the Individual Defendants: (i) directly participated in the management of the Company; (ii) was directly involved in the day-to-day operations of the Company at the highest levels; (iii) was privy to confidential proprietary information concerning the Company and its business and operations; (iv) was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein; (v) was directly or indirectly involved in the oversight or implementation of the Company's internal controls; (vi) was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or (vii) approved or ratified these statements in violation of the federal securities laws.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

13.    The Company is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

14.    The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to the Company under *respondeat superior* and agency principles.

15.    The Company and the Individual Defendants are referred to herein, collectively, as the "Defendants."

<u>**SUBSTANTIVE ALLEGATIONS**</u>

<u>**Background**</u>

16.    MoneyGram, together with its subsidiaries, is a money transfer company that allows customers to send money around the globe.

<u>**Materially False and Misleading Statements Issued During the Class Period**</u>

17.    The Class Period begins on June 17, 2019, when MoneyGram issued a press release announcing that it was entering into a strategic partnership with Ripple Labs, Inc. ("Ripple").    Ripple is a blockchain technology company and the developer of the cryptocurrency XRP.    The press release stated, in pertinent part:

MoneyGram International, Inc. (NASDAQ: MGI), one of the world's largest money transfer companies, announced today that it has entered into a strategic agreement with Ripple, a provider of leading enterprise blockchain solutions

4

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

for global payments. This agreement will enable MoneyGram to utilize Ripple's xRapid product (XRP) in foreign exchange settlement as part of the MoneyGram's cross-border payment process. The partnership supports the companies' shared goal of improving the settlement of cross-border payments by increasing efficiency and reducing cost through integration of the XRP platform.

\* \* \*

"I'm extremely excited about Ripple's investment in MoneyGram and the related strategic partnership," said Alex Holmes, MoneyGram Chairman and CEO. "As the payments industry evolves, we are focused on continuing to improve our platform and utilizing the best technology as part of our overall settlement process," said Mr. Holmes. "Through our partnership with Ripple, we will also have the opportunity to further enhance our operations and streamline our global liquidity management. Since our initial partnership announced in January 2018, we have gotten to know Ripple and are looking forward to further leveraging the strengths of both of our businesses."

18.     Also on June 17, 2019, MoneyGram filed with the SEC a Form 8-K.  The Form 8-K attached a Securities Purchase Agreement by which Ripple agreed to invest up to $50 million in MoneyGram stock as part of the strategic agreement between the two companies.

19.     On this news, the price of MoneyGram stock jumped from a closing price of $1.45 per share on June 17, 2019, to open at $3.66 per share on June 18, 2019, an increase of over 150%.

20.     On August 2, 2019, MoneyGram filed its quarterly report on Form 10-Q with the SEC for the quarter ended June 30, 2019 (the "2Q19 10-Q").  Attached to the 2Q19 10-Q were certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

the Individual Defendants attesting to the accuracy of the financial statements and the disclosure of all fraud.

21.     The 2Q19 10-Q stated:

Additionally, on June 17, 2019, we announced a commercial agreement with Ripple. The commercial agreement allows MoneyGram to utilize Ripple's xRapid blockchain product, as well as XRP, Ripple's cryptocurrency, to facilitate cross-border settlement. The Company expects that this will reduce working capital needs and have the potential to generate additional earnings and cash flow.

22.     On November 6, 2019, MoneyGram filed its quarterly report on Form 10-Q with the SEC for the quarter ended September 30, 2019 (the "3Q19 10-Q").  Attached to the 3Q19 10-Q were certifications pursuant to SOX signed by the Individual Defendants attesting to the accuracy of the financial statements and the disclosure of all fraud.

23.     The 3Q19 10-Q stated further:

On June 17, 2019, we announced a commercial agreement with Ripple. The commercial agreement allows MoneyGram to utilize Ripple's On Demand Liquidity blockchain product (formerly known as xRapid), as well as XRP, Ripple's cryptocurrency, to facilitate cross-border foreign currency exchange settlement. The Company is compensated by Ripple for developing and bringing liquidity to foreign exchange markets, facilitated by Ripple's blockchain, and providing a reliable level of foreign exchange trading activity. The Company expects that this partnership, at scale, will reduce our working capital needs and generate additional earnings and cash flows.

24.     On February 28, 2020, MoneyGram filed its annual report on Form 10-K with the SEC for the year ended December 31, 2019 (the "2019 10-K"), which was signed by the Individual Defendants.  Attached to the 2019 10-K were certifications pursuant to SOX

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

signed by the Individual Defendants attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

25.     The 2019 10-K stated the following about Ripple, identifying the strong contribution that market development fees received from Ripple made to MoneyGram's financial results:

> *Market Development Fees* — **Market development fees are fees paid by Ripple Labs Inc. ("Ripple") to the Company for developing and bringing liquidity to foreign exchange markets, facilitated by Ripple's On Demand Liquidity ("ODL") platform, and providing a reliable level of foreign exchange trading activity.** The liquidity services provided by the Company are not considered distinct under ASC Topic 606, "*Revenue from Contracts with Customers,*" and consequently MoneyGram will recognize fees received for market development services as vendor consideration in accordance with ASC Topic 705, "*Cost of Sales and Services.*" The fees will be presented as a contra expense to offset costs incurred to Ripple and are recorded as incurred in "Transaction and operations support" in the Consolidated Statements of Operations. Per the terms of the commercial agreement, the Company does not pay fees to Ripple for its usage of the ODL platform and there are no claw back or refund provisions.
>
> **For the year ended December 31, 2019, market development fees were $11.3 million. Additionally, as of December 31, 2019, the Company had a receivable from Ripple for market development fees of $0.9 million.**

(Emphases added.)

26.     On May 1, 2020, MoneyGram filed its quarterly report on Form 10-Q with the SEC for the quarter ended March 31, 2020 (the "1Q20 10-Q"). Attached to the 1Q20

7

10-Q were certifications pursuant to SOX signed by the Individual Defendants attesting to the accuracy of the financial statements and the disclosure of all fraud.

27.     The 1Q20 10-Q stated:

For the three months ended March 31, 2020, the Company received a net benefit of $12.1 million composed of $16.6 million of Ripple market development fees, which were partially offset by related transaction and trading expenses of $4.5 million, both of which were included in "Transaction and operations support" line on the Condensed Consolidated Statements of Operations.

28.     On July 31, 2020, MoneyGram filed its quarterly report on Form 10-Q with the SEC for the quarter ended June 30, 2020 (the "2Q20 10-Q").  Attached to the 2Q20 10-Q were certifications pursuant to SOX signed by the Individual Defendants attesting to the accuracy of the financial statements and the disclosure of all fraud.

29.     The 2Q20 10-Q stated:

For the three months ended June 30, 2020, the Company received a net benefit of $8.8 million composed of $15.1 million of Ripple market development fees, which were partially offset by related transaction and trading expenses of $6.3 million, both of which were included in the "Transaction and operations support" line on the Condensed Consolidated Statements of Operations. For the six months ended June 30, 2020, the Company received a net benefit of $20.9 million composed of $31.7 million of Ripple market development fees, which were partially offset by related transaction and trading expenses of $10.8 million.

30.     On October 30, 2020, MoneyGram filed its quarterly report on Form 10-Q with the SEC for the quarter ended September 30, 2020 (the "3Q20 10-Q").  Attached to

8

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

the 3Q20 10-Q were certifications pursuant to SOX signed by the Individual Defendants attesting to the accuracy of the financial statements and the disclosure of all fraud.

31.     The 3Q20 10-Q stated:

> For the three months ended September 30, 2020, the Company received a net benefit of $8.9 million composed of $9.3 million of Ripple market development fees, which were partially offset by related transaction and trading expenses of $0.4 million, both of which were included in the "Transaction and operations support" line on the Condensed Consolidated Statements of Operations. For the nine months ended September 30, 2020, the Company received a net benefit of $29.8 million composed of $41.0 million of Ripple market development fees, which were partially offset by related transaction and trading expenses of $11.2 million.

32.     The statements referenced in ¶¶17-18 and 20-31 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations, and financial results, which were known to Defendants or recklessly disregarded by them.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) XRP, the cryptocurrency that MoneyGram was utilizing as part of its Ripple partnership, was viewed as an unregistered and therefore unlawful security by the SEC; (ii) in the event that the SEC decided to enforce the securities laws against Ripple, MoneyGram would be likely to lose the lucrative stream of market development fees that was critical to its financial results throughout the Class Period; and (iii) as a result, Defendants' public statements were materially false and/or misleading at all relevant times.

9

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

## **The Truth Begins to Emerge**

33.     On December 22, 2020, the SEC filed a lawsuit against Ripple, alleging that Ripple's cryptocurrency XRP is an unregistered security in violation of the securities laws.

34.     The SEC alleged a brazen scheme in which Ripple received legal advice as early as 2012 that XRP could be considered an investment contract and therefore a security that needs to be registered under the securities laws.  Nevertheless, Ripple decided to ignore this advice and assume the risk of initiating a large-scale distribution of XRP without registration.

35.     Relying on Ripple's own statements, the SEC points out that Ripple's stated business plan has been to sell XRP to as many speculative investors as possible, and any non-speculative or non-investment use of the cryptocurrency represents a very small and inconsequential piece of the enterprise.

36.     In fact, the SEC alleges specifically that the major non-investment use of the XRP cryptocurrency—transferring money on Ripple's ODL platform—is not market-driven, but subsidized by Ripple itself.

37.     In order to convince anyone to use ODL to transfer money, the SEC alleged, Ripple had to make a $50 million equity investment and pay significant financial compensation to an entity that the SEC's Complaint refers to only as the "Money Transmitter."  Of course, the "Money Transmitter" is MoneyGram.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

38.    In addition, the SEC's Complaint describes how MoneyGram itself took part in the sale of unregistered XRP securities on the open market:

341. Specifically, from 2019 through June 2020, Ripple paid the Money Transmitter 200 million XRP, which the Money Transmitter immediately monetized by selling XRP into the public market, typically on the very days it received XRP from Ripple. The Money Transmitter publicly disclosed earning over $52 million in fees and incentives from Ripple through September 2020.

342. The Money Transmitter became yet another conduit for Ripple's unregistered XRP sales into the market, with Ripple receiving the added benefit that it could tout its inorganic XRP "use" and trading volume for XRP. The Money Transmitter has served that principal purpose for Ripple in exchange for significant financial compensation.

39.    On December 23, 2020, MoneyGram issued a press release entitled: "MoneyGram Statement on the SEC Action Against Ripple."  The press release stated:

The Company has not currently been notified or been made aware of any negative impact to its commercial agreement with Ripple but will continue to monitor for any potential impact as developments in the lawsuit evolve. MoneyGram has had a commercial agreement with Ripple since June 2019; this agreement represents the use of Ripple's foreign exchange (FX) blockchain trading platform (ODL) for the purchase or sale of four currencies. MoneyGram has continued to utilize its other traditional FX trading counterparties throughout the term of the agreement with Ripple, and is not dependent on the Ripple platform to accomplish its FX trading needs.

As a reminder, MoneyGram does not utilize the ODL platform or RippleNet for direct transfers of consumer funds – digital or otherwise. Furthermore, MoneyGram is not a party to the SEC action.

40.    On February 22, 2021, MoneyGram filed its annual report on Form 10-K with the SEC for the year ended December 31, 2020 (the "2020 10-K"), which was signed by

11

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

the Individual Defendants.  Attached to the 2020 10-K were certifications pursuant to SOX signed by the Individual Defendants attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

41.    The 2020 10-K stated the following about Ripple, in pertinent part:

> On December 22, 2020, the SEC filed a lawsuit against Ripple alleging that they raised over $1.3 billion through an unregistered, ongoing digital asset offering in violation of the registration provisions of the Securities Act of 1933. Subsequently, substantially all of the U.S.-based digital asset exchanges removed XRP from their platforms. MoneyGram ceased transacting with Ripple under the commercial agreement in early December 2020 and has not since resumed trading. ***It is possible that MoneyGram will not resume transacting with Ripple under the commercial agreement and will be unable to receive the related market development fees in 2021 and beyond.*** Per the terms of the commercial agreement, the Company does not pay fees to Ripple for its usage of the ODL platform or the related software and there are no clawback or refund provisions.

> \* \* \*

> ***The "Transaction and operations support" line on the Consolidated Statements of Operations includes market development fees of $50.2 million and $11.3 million for the years ended December 31, 2020 and December 31, 2019, respectively.***

(Emphases added.)

42.    Also on February 22, 2021, MoneyGram issued a press release on its financial results for its fourth quarter and full-year ended December 31, 2020.  The press release stated, in pertinent part:

> **First Quarter 2021 Outlook**

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

Assuming the global economic environment were to remain consistent with the fourth quarter the Company is providing the following outlook:

For the first quarter of 2021, the Company anticipates reporting total revenue of approximately $300 million on the strength of its money transfer business and continued triple-digit cross-border MoneyGram Online growth, partially offset by an estimated $8 million reduction in gross investment revenue.

**In addition, the Company is not planning for any benefit from Ripple market development fees in the first quarter. Due to the uncertainty concerning their ongoing litigation with the SEC, the Company has suspended trading on Ripple's platform. In the first quarter of 2020, the Company realized a net expense benefit of $12.1 million from Ripple market development fees.**

**Based on the combination of these factors, the Company anticipates reporting Adjusted EBITDA of approximately $50 million in the first quarter of 2021.**

(Emphases added.)

43.     On this news, MoneyGram securities fell 33.2%, from a closing price on February 19, 2021 of $10.87 per share, to a closing price on February 23, 2021 of $7.26 per share, damaging investors.

44.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

45.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons and entities other

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

than Defendants that purchased or otherwise acquired publicly traded MoneyGram securities on the NASDAQ during the Class Period, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of MoneyGram and its subsidiaries, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

46.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, MoneyGram securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

47.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

48.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

49.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

a) whether the Exchange Act was violated by Defendants' acts as alleged herein;

b) whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the financial condition and business of the Company;

c) whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

d) whether the Defendants caused the Company to issue false and misleading filings during the Class Period;

e) whether Defendants acted knowingly or recklessly in issuing false filings;

f) whether the prices of MoneyGram securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

g) whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

50.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

51.  Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

a)  MoneyGram shares met the requirements for listing, and were listed and actively traded on the NASDAQ, an efficient market;

b)  As a public issuer, the Company filed periodic public reports;

c)  MoneyGram regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

d)  MoneyGram's securities were liquid and traded with moderate to heavy volume during the Class Period; and

e)  The Company was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

52.  Based on the foregoing, the market for MoneyGram securities promptly digested current information regarding the Company from all publicly available sources and reflected such information in the prices of the Company's securities, and Plaintiff and

the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

53.    Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

## COUNT I

### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)

54.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

55.    This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

56.    During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

17

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

57.    Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder in that they:

- employed devices, schemes and artifices to defraud;

- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

- engaged in acts, practices and a course of business that operated as a fraud or deceit upon Plaintiff and others similarly situated in connection with their purchases of MoneyGram securities during the Class Period.

58.    Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws.  These Defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of MoneyGram's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

18

59.     The Individual Defendants, who are or were the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other MoneyGram personnel to members of the investing public, including Plaintiff and the Class.

60.     As a result of the foregoing, the market price of MoneyGram securities was artificially inflated during the Class Period.  In ignorance of the falsity of Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of MoneyGram securities during the Class Period in purchasing MoneyGram securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

61.     Had Plaintiff and the other members of the Class been aware that the market price of MoneyGram's securities had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased MoneyGram's securities at the artificially inflated prices that they did, or at all.

62.     As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

63.    By reason of the foregoing, Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder and are liable to the Plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of MoneyGram's securities during the Class Period.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

64.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

65.    During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of MoneyGram's business affairs.  Because of their senior positions, they knew the adverse non-public information about the Company's false financial statements.

66.    As officers of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to MoneyGram's financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

67.    Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which MoneyGram disseminated in the marketplace

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

during the Class Period concerning the Company's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of MoneyGram securities.

68. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of Plaintiff and the Class, prays for judgment and relief as follows:

A. Declaring this action to be a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating Plaintiff's counsel as Lead Counsel;

B. Awarding damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, together with interest thereon;

C. Awarding Plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D. Awarding Plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

## **<u>JURY TRIAL DEMANDED</u>**

Plaintiff hereby demands a trial by jury.

Dated:  March 10, 2021                 Respectfully submitted,


                                        POMERANTZ LLP

                                        */s/ Jennifer Pafiti*
                                        Jennifer Pafiti (SBN 282790)
                                        1100 Glendon Avenue, 15th Floor
                                        Los Angeles, California 90024
                                        Telephone: (310) 405-7190
                                        Facsimile: (917) 463-1044
                                        jpafiti@pomlaw.com

                                        BRONSTEIN, GEWIRTZ &
                                        GROSSMAN, LLC
                                        Peretz Bronstein
                                        (*pro hac vice* application forthcoming)
                                        60 East 42nd Street, Suite 4600
                                        New York, New York 10165
                                        Telephone: (212) 697-6484
                                        Facsimile: (212) 697-7296
                                        peretz@bgandg.com

                                        *Attorneys for Plaintiff*

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS